IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WAY SERVICES, INC.,** : | |
| Plaintiff, : | |
| v. : | CIVIL NO. 06-CV-2109 |
| : | |
| **ADECCO NORTH AMERICA, LLC,** : | |
| et al., : | |
| Defendants. : | |

**MEMORANDUM OPINION & ORDER**

**RUFE, J.**                                                                                                                   **June 18, 2007**

This case involves a dispute between a franchisor and franchisee, both of whom claim that the other has breached their franchise agreement. Previously, the Court granted Plaintiff's Motion to Compel Arbitration, and arbitration before the American Arbitration Association ("AAA") has commenced. Presently before the Court is Plaintiff's Motion to Stay Arbitration, in which it argues that only Count II of its Complaint should be arbitrated by the AAA. Because Plaintiff entered an arbitration agreement granting the arbitration panel the power to decide the scope of its own jurisdiction, the Court will deny the Motion, and the arbitration before the AAA may proceed in accordance with the panel's ruling.

**I.  BRIEF FACTUAL BACKGROUND**

The instant dispute arises out of a relationship between Plaintiff Way Services, Inc. ("Way Services") and Defendants Adecco USA, Inc. and Adecco North America, LLC (collectively "Adecco"), that ostensibly commenced in August 1993. At that time, Way Services and Adia Services, Inc. ("Adia Services") entered a franchise agreement under which Plaintiff was to operate

a temporary-staffing business in Pennsylvania.[1] Adecco is the successor-in-interest to Adia Services, and the franchise agreement remained in place after Adecco replaced Adia Services as the franchisor.

In addition to outlining the parties' relationship, the franchise agreement included an arbitration clause requiring that "any dispute or disagreement between the parties arising out of or in relation to this Agreement . . . be settled by arbitration under the rules then obtaining of the American Arbitration Association in San Francisco, California."[2] The agreement included a choice-of-law provision requiring that it be governed by and interpreted under California law.[3]

Apparently, the franchise relationship was an amicable one for over a decade. Sometime in early 2006, however, Adecco demanded that Way Services discharge its President and General Manager, Michael Doner, based on allegations of misconduct. In April 2006, Way Services complied with Adecco's demand, and Mr. Doner was terminated. On May 12, 2006, Adecco notified Way Services that it was terminating their franchise relationship as of May 21, 2006. In this lettered notice of termination, Adecco identified numerous provisions of the franchise agreement that Way Services was allegedly breaching by continuing to associate with and support Traffic Control Services, Inc. ("TCS"), a business owned by Mr. Doner, his wife, and his mother.

In response, Way Services filed a Complaint in this Court, alleging three causes of action against Adecco and seeking an injunction prohibiting Adecco from terminating the franchise agreement. In Count I, Way Services alleges that Adecco committed fraud by instructing it not to

---

[1] The Court notes that Way Services previously had a relationship with Adia Services' predecessors-in-interest. The modern relationship, however, which is based on the franchise agreement currently in force, began in 1993.

[2] Franchise Agreement [Doc. # 47-2, Ex. A], at 43, ¶ 22.1.

[3] Id. at 41, ¶ 21.1.

remedy its breaches of the franchise agreement, and then attempting to terminate the agreement. In Count II, Way Services alleges that Adecco's attempt to terminate the franchise agreement constitutes a breach of that agreement. In Count III, Way Services alleges that Adecco's attempt to terminate the franchise agreement constitutes tortious interference with a contract that it had made with TCS. The Court immediately entered a temporary restraining order precluding Adecco from terminating the franchise agreement, pending consideration of the request for a preliminary injunction.

Before a hearing was held on Way Services' Application for a Preliminary Injunction,[4] Way Services filed a Motion to Compel Arbitration. Adecco responded to this flurry of litigation by filing an Answer and several counterclaims against Way Services, including claims for breach of contract, trademark infringement, and conspiracy to defraud. Adecco also filed a response to the Motion to Compel Arbitration, in which it agreed that arbitration was appropriate, but argued that it should be able to terminate the franchise agreement before arbitrating the dispute.

On June 23, 2006, the Court granted Way Services' Motion to Compel Arbitration, requiring Way Services to file for arbitration within seven days. On June 27, 2006, Way Services filed a Demand for Arbitration with the AAA, attaching a copy of its federal-court Complaint and informing the AAA that its other causes of action should be arbitrated "to the extent the Federal District Court does not exercise jurisdiction over [them]." Adecco filed an Answering Statement asserting breach-of-contract counterclaims against Way Services only.

---

[4] Pl.'s Application for Prelim. Inj. [Doc. # 9]. After briefing and a hearing, this application was subsequently granted, and a preliminary injunction was entered on September 6, 2006. See Mem. Op. & Order [Doc. # 43], Sept. 6, 2006.

Thereafter, the AAA ordered the parties to brief the issue of the arbitration's scope, and the parties did so through lettered briefs. After considering the briefing, the AAA panel determined that the franchise agreement granted it the power to determine its own jurisdiction, and ruled that all three of Way Services' claims and Adecco's breach-of-contract claim were subject to the pending arbitration.[5]

In response, Way Services has filed the instant Motion to Stay Arbitration. Adecco has filed its Response, and the Motion is now ready for this Court's review.

## II. DISCUSSION

Way Services, obviously dissatisfied with the AAA panel's determination of arbitrability, now moves this Court to stay the arbitration and assert jurisdiction over Counts I and II of Way Services' Complaint, as well as all of Adecco's counterclaims. Way Services first argues that the Court's Orders granting the Motion to Compel Arbitration and placing the matter in civil suspense compelled arbitration of Count II of the Complaint only and reserved exclusive jurisdiction over all other matters. More importantly, Way Services argues that questions of arbitrability, such as the appropriate scope of an arbitration, are to be decided by the Court rather than the arbitration panel. Accordingly, Way Services asks this Court to reject the AAA panel's determination of scope and, instead, perform its own inquiry into which claims are to be arbitrated.

Generally, the question of arbitrability is a gateway issue to be decided by a court rather than an arbitrator.[6] The parties to an arbitration agreement can, however, contract around this

---

[5] See Order of Arbitrator [Doc. # 47-7, Ex. F], Jan. 25, 2007.

[6] AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986).

presumption by agreeing to submit the arbitrability question itself to arbitration.[7] But, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so."[8] Silence or ambiguity about who should decide the arbitrability issue should not lead a court to presume that the parties intended for the issue to be decided by the arbitrator.[9] Rather, a court must examine the arbitration agreement to decide if, when construed under the relevant state law, the agreement evidences a clear intention that the arbitrators will have the authority to determine the scope of arbitration.[10]

Under this framework, numerous courts have found that when an arbitration agreement incorporates by reference rules giving the arbitrator the power to rule on his or her own jurisdiction, "the parties' incorporation of those rules evidences a clear and unmistakable intent to delegate the determination of arbitrability to [the] arbitrator."[11] Specifically, several courts—including California courts applying California law—presented with arbitration clauses nearly identical to the one in this case have found that reference to the AAA rules, or similar rules granting the arbitrator the authority to determine his or her own jurisdiction, establishes a clear and unmistakable intent to permit the arbitrators to decide the arbitrability question.[12]

---

[7] First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995); see also Apollo Computer, Inc. v. Berg, 886 F.2d 469, 473 (1st Cir. 1989).

[8] First Options, 514 U.S. at 944 (citing AT & T, 475 U.S. at 649).

[9] Id. at 944–45.

[10] See Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir. 2005).

[11] Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1373 (Fed. Cir. 2006)

[12] See, e.g., Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332 (11th Cir. 2005); Contec, 398 F.3d at 208; Apollo Computer, 886 F.2d at 473; Rodriguez v. Am. Techs., Inc., 39 Cal. Rptr. 3d 437, 446 (Ct. App. 2006); Dream Theater, Inc. v. Dream Theater, 21 Cal. Rptr. 3d 322, 329 (Ct. App. 2004).

Significantly, California law embraces the conclusion that incorporation of the AAA rules evidences a clear and unmistakable intent to have the arbitrator determine any arbitrability questions. For example, in Dream Theater, Inc. v. Dream Theater,[13] the California Court of Appeal considered an arbitration clause providing that contested claims would be submitted to "mandatory, final and binding arbitration in the County of Los Angeles, California, in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect."[14] After examining the Supreme Court's decision in First Options,[15] and after noting that "California law is consistent with federal law on the question of who decides disputes over arbitrability,"[16] the court concluded that reference to the AAA rules—which "specify that the arbitrator will decide disputes over the scope of the arbitration agreement"[17]—is sufficiently clear and unmistakable evidence that the arbitrator should decide whether a claim is arbitrable.[18]

Various federal courts have arrived at the same conclusion when considering similar arbitration clauses. For example, in Contec Corp. v. Remote Solution Co.,[19] the Second Circuit Court of Appeals was faced with an arbitration clause that read, in pertinent part:

In the event of any controversy arising with respect to this Agreement, both parties

---

[13] 21 Cal. Rptr. 3d 322 (Ct. App. 2004).

[14] Id. at 327.

[15] Id. at 326.

[16] Id.

[17] Id. at 329.

[18] Id.; see also Rodriguez, 39 Cal. Rptr. 3d at 446 (holding the same when considering an arbitration clause that incorporated the AAA's Construction Industry Rules, which also designate the arbitrability question for arbitration).

[19] 398 F.3d 205 (2d Cir. 2005).

>shall use its [sic] best efforts to resolve the controversy.  In the event the parties are unable to arrive at a resolution, such controversy shall be determined by arbitration held in the City of Albany, New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA") or any organization that is the successor thereto.[20]

Acknowledging that Rule 7(a) of the AAA Commercial Arbitration Rules grants the arbitrator "the power to rule on his or her own jurisdiction, including any objection with respect to the existence, scope or validity of the arbitration agreement," the court held that "the incorporation serve[d] as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."[21] Accordingly, the court held that arbitration of the arbitrability issue itself was appropriate.

Likewise, in Qualcomm Inc. v. Nokia Corp.,[22] the Federal Circuit concluded that the parties had clearly and unmistakably evidenced their intent to arbitrate the arbitrability issue by incorporating the AAA rules into their arbitration agreement.  In that case, the court considered an arbitration clause dictating that "any dispute, claim or controversy arising out of or relating to th[e] Agreement, or the breach or validity [t]hereof . . . be settled by arbitration in accordance with the arbitration rules of the American Arbitration Association."[23]  Approving of and adopting the Second Circuit's analysis in Contec, the court held that incorporation of the AAA rules "clearly and unmistakably shows the parties' intent to delegate the issue of determining arbitrability to an arbitrator."[24]

---

[20] Id. at 208.

[21] Id.

[22] 466 F.3d 1366 (Fed. Cir. 2006).

[23] Id. at 1368.

[24] Id. at 1373.

The Eleventh Circuit Court of Appeals reached this same result when presented with a similar arbitration clause. In Terminix International Co., LP v. Palmer Ranch Limited Partnership,[25] the parties had entered arbitration agreements providing that "arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association."[26] The court, noting the AAA rule granting an arbitrator the authority to rule on his or her own jurisdiction as well as the Federal Circuit's decision in Contec, held that, by incorporating the AAA rules into their agreements, the parties had clearly and unmistakably agreed that the arbitrator should decide the question of arbitrability.[27]

The First Circuit arrived at a similar conclusion when dealing with an arbitration agreement that incorporated the rules of arbitration of the International Chamber of Commerce ("ICC"), as opposed to the AAA. In Apollo Computer, Inc. v. Berg,[28] the court considered an arbitration clause stating that "all disputes arising out of or in connection with their contract would be settled by binding arbitration in accordance with the rules of arbitration of the [ICC]."[29] Articles 8.3 and 8.4 of the ICC rules granted the arbitrator the power to decide the arbitrability question if such question was raised by either party.[30] Consequently, the court held that the parties had contracted around the presumption that a court would decide the arbitrability issue by agreeing to be bound by the ICC rules. Their agreement, therefore, "clearly and unmistakably allow[ed] the

---

[25] 432 F.3d 1327 (11th Cir. 2005).

[26] Id. at 1332.

[27] Id.

[28] 886 F.2d 469 (1st Cir. 1989).

[29] Id. at 473.

[30] Id.

arbitrator to determine her own jurisdiction."[31]

Considering this relevant case law, the Court is persuaded that the prevailing rule across jurisdictions is that incorporation by reference of rules granting the arbitrator the authority to decide questions of arbitrability—especially the AAA rules—is clear and unmistakable evidence that the parties agreed to submit arbitrability questions to the arbitrators. More importantly, the Court is convinced that California law has adopted this rule.

If, after applying this rule, a court ultimately determines that the parties clearly and unmistakably intended to submit the arbitrability question to the arbitrator, then it must defer to the arbitrator's decision about arbitrability of the claims.[32] The arbitrator's decision is to be reconsidered and vacated only in limited and rare circumstances, such as those outlined in 9 U.S.C. § 10.[33]

In the matter currently before the Court, Way Services' assertion that the Court must decide the scope of arbitration itself rather than deferring to the arbitrators' determination, is unfounded. The instant case presents an issue virtually identical to that presented in cases like Qualcomm, Contec, Terminix, and Dream Theater, and the Court sees no reason to reach a different conclusion in this case. When Way Services entered the franchise agreement, it agreed to an arbitration clause that required arbitration of disputes in accordance with the AAA's arbitration rules. Those rules—specifically Rule 7(a)—grant the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration

---

[31] Id.

[32] First Options, 514 U.S. at 943.

[33] See id.; 9 U.S.C. § 10 (2006) (outlining the bases for vacating an arbitrator's award, such as corruption or fraud in the process, or misconduct by the arbitrator).

agreement."[34] Accordingly, the incorporation of the AAA rules clearly and unmistakably evidences Way Services' agreement to arbitrate all disputes as to arbitrability, including the proper scope of the arbitration. In light of the significant authority supporting this conclusion, Way Services' arguments to the contrary are unconvincing.

Since the AAA arbitration panel had the authority to determine its own jurisdiction in this case, the Court must defer to its ruling on the scope of the pending arbitration. This is clearly not a case where vacatur of the panel's ruling would be appropriate. There are no allegations of bias, impropriety, corruption, or misconduct, and the arbitrators have not exceeded their power. Therefore, this Court will not disrupt the arbitrators' ruling that Counts I, II, and III of Way Services' Complaint, as well as Adecco's counterclaim for breach of contract, will be arbitrated before them pursuant to the franchise agreement.

### III. CONCLUSION

Because Way Services agreed to resolve any disputes arising from or related to the franchise agreement through arbitration governed by the AAA rules, it cannot now successfully attempt to disavow that commitment. The AAA rules clearly state that the arbitrators have the authority to determine their own jurisdiction, and, therefore, this Court cannot remove the question of arbitrability from the arbitration panel's purview. To do so would be to act in direct contravention of the parties' arbitration agreement. Accordingly, the Court will deny Way Services' Motion to Stay Arbitration, and the ongoing arbitration may proceed as currently defined by the AAA panel.

An appropriate Order follows.

---

[34] AAA Commercial Arbitration Rules [Doc. # 47-8, Ex. G], Rule 7(a), at 11 of 28.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **WAY SERVICES, INC.,** | : | |
| Plaintiff, | : | |
| v. | : | CIVIL NO. 06-CV-2109 |
| | : | |
| **ADECCO NORTH AMERICA, LLC,** | : | |
| et al., | : | |
| Defendants. | : | |

## ORDER

**AND NOW**, this 18th day of June 2007, upon consideration of Plaintiff's Motion to Stay Arbitration [Doc. # 45], Plaintiff's Memorandum in Support thereof [Doc. # 46], and Defendants' Opposition thereto [Doc. # 47], and after careful review of the relevant legal authorities, it is hereby **ORDERED** that the Motion is **DENIED** and the arbitration may proceed.

It is **FURTHER ORDERED** that the Court retains jurisdiction over this matter, but the case shall remain in the Civil Suspense File until it is in a status such that it may proceed to final disposition.

It is so **ORDERED**.

BY THE COURT:

/s/ Cynthia M. Rufe
**CYNTHIA M. RUFE, J.**